IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RONALD W. KENT, | ) | Case No.  1:02CV0041 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | Judge Ann Aldrich |
| | ) | |
| JOHN D. MORGAN, Warden, | ) | Magistrate Judge James S. Gallas |
| | ) | |
| Respondent. | ) | |
| | ) | <u>MEMORANDUM AND ORDER</u> |

On January 7, 2002, petitioner Ronald W. Kent ("Kent") filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 (Docket No. 1), in which he challenges the constitutionality of his conviction for involuntary manslaughter. *See State v. Kent*, Crawford County Court of Common Pleas No. 98CR0103. Now before the court is a report and recommendation issued by Magistrate Judge Gallas, recommending that the court deny Kent's petition (Docket No. 21). For the following reasons, the court adopts the Magistrate Judge's findings of fact and conclusions of law, and denies Kent's petition.

**I. Background**

Kent's daughter, Kassie, died on August 20, 1998. She was three months old. An examination of Kassie's body revealed an array of horrible injuries: fractured ribs, a broken tibia, and a fractured skull. The skull injury appears to have led directly to Kassie's death.

In December of 1998, a Crawford County grand jury issued a joint indictment naming both Kent and April Greene, Kassie's mother. The defendants were each charged with a single count of involuntary manslaughter, based on the commission of an underlying felony, namely child endangerment.

Sensing that the defendants would seek to place blame on each other in constructing their respective defenses, Kent initially filed a motion for separate trials. The trial judge granted this motion, but later rejoined the proceedings pursuant to Kent's oral request. Transcripts of the trial proceedings indicate that Kent's counsel made this request following the judge's suggestion that certain evidentiary concerns – specifically, the introduction of a co-defendant's statements as non-hearsay – could be alleviated through allowing a joint trial to proceed. The trial of Kent and Greene began in Crawford County on June 23, 1999.

At trial, the prosecution presented evidence tending to show that Kent had spent the night of August 19 drinking with friends, an activity which displeased Greene. Greene's displeasure led her to forbid Kent from sleeping at home, so he spent the night elsewhere, returning around 8:00 am on August 20. Upon seeing Kent on the morning of August 20, Greene announced that she would not permit him to drive to work. She therefore called the Bucyrus police and informed them that her boyfriend had been drinking, and that he planned to drive on a suspended license. Officers arrived at the Kent home at 8:14 a.m. and departed by 8:27, observing in the interim that Kent was not intoxicated, but that he did have an invalid license. The officers also reported seeing Kassie awake and alert, blinking and appearing to smile, while in the arms of her mother.

The state's evidence showed that Kent called his employer to solicit a ride to work, and then remained in his apartment with Kassie while Greene left to visit a neighbor, Terry Kalb[1]. Between 9:00 and 9:30 a.m., one Chris Kafer arrived, along with Debbie Estes, to pick up Kent. Greene testified that she then returned to the apartment, greeted Kafer and Estes, and heard Kassie crying from inside.

---

[1] Kalb apparently liked to watch the 9:00 a.m. airing of the Jerry Springer program; the state's evidence placed Greene at Kalb's apartment from 8:50 until Kafer's arrival in the driveway.

When Kent emerged from the apartment, he handed Kassie to Greene, and prepared to leave for work. Only minutes later, Kent claimed to notice that Kassie had stopped breathing, and rushed her to the hospital. An emergency room physician identified Kent as "rush[ing] through the door with a child in his arms ... crying out, 'she's not breathing,'" around 9:40 a.m. Intubation of Kassie was followed by x-rays revealing massive head trauma, and a life flight from Bucyrus Community Hospital to Children's Hospital in Columbus. Kassie was pronounced dead at 8:00 p.m. on August 20.

Medical expert testimony introduced by the state showed that Kassie was most likely killed by a blow that would have rendered her unable to smile, move her eyes, or cry. In a videotape interview, Kent admitted to being alone with Kassie while Greene visited Kalb, *i.e.*, during the period of time when this blow was most likely struck. The state also refuted Kent's testimony regarding his handing Kassie to Greene and then noticing her ailment, by showing that Kent's position rendered him physically unable to see the child. Finally, the prosecution was also permitted to introduce character evidence concerning Kent's proclivity towards alcoholism, his hatred of African-Americans, and his reputation as a generally bad person.

After the prosecution concluded its case, both Kent and Greene filed Rule 29 motions for acquittal. The judge indicated that he would deny Kent's motion, but that he would take Greene's under consideration. Kent then proceeded to call witnesses in his defense, and to begin introducing evidence regarding Greene's violent tendencies, his alleged suspicion of Greene as an abuser (following Kassie's death and the revelation of her chest injuries), and Greene's history of participation in such activities as a makeshift "demolition derby" while caring for Kassie.

The following day, the judge granted Greene's motion. The judge informed the jury that the state had failed to prove all the elements of the offense charged against Greene. He then allowed the state to

reopen its case, in order to call Greene as a witness. On July 1, 1999, the jury found Kent guilty of involuntary manslaughter. He was sentenced to a term of ten years' imprisonment.

## II. Discussion

Federal Rule of Civil Procedure 72 (b) requires this Court to review *de novo* any portion of the Magistrate Judge's disposition to which specific objections have been made. Accordingly, Local Rule 72.3 (b) requires that objections "specifically identify the portions of the proposed findings, recommendations, or reports to which objection is made and the basis for such objections." A District Judge "shall make *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge." *Id.*

Additionally, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §2241 *et seq*., govern the court's review of petitions for habeas corpus relief. AEDPA dictates that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d)(2004). In *Williams v. Taylor*, 529 U.S. 362 (2000), the Supreme Court explained the "contrary to" language of section (1) as follows:

> A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases ... A state-court decision will also be contrary to this Court's clearly established precedent

if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.

*Id*. at 405-406, and the "unreasonable application" language thusly:

an unreasonable application of federal law is different from an incorrect application of federal law ... In § 2254(d)(1), Congress specifically used the word "unreasonable, " and not a term like "erroneous" or "incorrect." Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id*. at 410-11.

Kent's first objection consists of a restatement of his argument that the procedures at his joint trial, including allowing the state to re-open its case following Greene's acquittal, violated his fundamental right to due process of law. The court agrees with the Magistrate Judge that the procedures permitted by the trial judge were highly unorthodox, and that allowing Greene to testify against Kent was "devastatingly prejudicial." However, the court also agrees with the Magistrate Judge that these errors do not rise to the level of a constitutional violation under the AEDPA standard.

First, it cannot be disputed that Kent, through counsel, waived his right to a separate trial. Such waivers are routinely upheld by courts as legitimate matters of trial strategy, even when it later appears that the strategy was ill-founded or ill-advised. *See, e.g.*, *United States v. Killip*, 819 F.2d 1542 (10th Cir. 1987); *United States v. Watkins,* 624 F.2d 65 (8th Cir. 1980); *United States v. Galeano*, 1993 U.S. Dist. LEXIS 6493 (S.D.N.Y. 1993). In this regard, Kent's first argument collapses into his claims of ineffective assistance of counsel.

Second, Kent has cited (and the court could locate) no case in which a similar trial procedure has been deemed a violation of due process rights warranting habeas relief. Kent has cited *Zafiro v. United States*, 506 U.S. 534 (1993), for the proposition that severance should be granted in cases presenting "a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent

the jury from making a reliable judgment about guilt and innocence." *Id*. at 539. But he does not challenge the Magistrate Judge's conclusion that *Zafiro* concerns matters of proper procedure under the Federal Criminal Rules, rather than fundamental due process rights. Moreover, Kent's argument is undermined by both the specific facts of *Zafiro*, in which the defendants (unlike Kent's counsel) sought severance on the basis of their mutually antagonistic defenses and had their motions denied, and the holding of the case, in which the Supreme Court found that "petitioners have not shown that their joint trial subjected them to any legally cognizable prejudice," *id.* at 541, and affirmed their convictions.

As the cases cited by the Magistrate Judge imply, the rules of procedure providing for severance are invoked most often to protect defendants from testimony by co-defendants who may have been subject to unjust intrusion or exploitation by agents of the state. In this case, the court agrees with the Magistrate Judge that Kent "has only established an independent decision by [Greene] to testify against [him.]" While this decision likely exercised a significant impact on the trial proceedings which followed, the court cannot find that it resulted in any decision contrary to, or any unreasonable application of, federal law.

Kent's second and third objections concern the Magistrate Judge's disposition of his claims regarding ineffective assistance of counsel. In his petition for habeas relief, Kent cites three indicia of trial counsel's ineffective performance: consent to the joint trial with an adverse co-defendant; the failure to move for a mistrial following the re-opening of the state's case; and the failure to object to inadmissible character and "prior bad acts" evidence concerning Kent. Kent acknowledges that the proper standard for evaluating this claim is contained in the familiar language of *Strickland v. Washington*, 466 U.S. 668 (1984): "the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688. "[Additionally], any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the

-6-

Constitution." *Id.* at 692. To establish prejudice, Kent must demonstrate that "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Although Kent's trial was characterized by questionable decisions on the part of both his counsel and the trial judge, this court agrees with the Magistrate Judge that Kent has not carried his burden to make such a showing. Through his brief summary of the evidence, the Magistrate Judge points out that Kent was most likely convicted as a direct result of (a) the state's acquittal of Greene; and (b) the evidence demonstrating that Kent was alone with his daughter at the most likely time of death (or at least during the period between the last observance of Kassie as awake and alert and the time when she was observed to have stopped breathing). None of the missteps committed by counsel and complained of by Kent would have strongly affected these developments if avoided. Even a separate trial of Greene, if undertaken using the same evidence and before the same tribunal, would likely have resulted in an acquittal, while the removal of Greene's testimony (while helpful to Kent) would not have seriously impeded the state's ability to place him as the only individual with sufficient opportunity to strike the killing blow.

In the fourth section of his objections, Kent merely refers back to the sufficiency of the evidence argument contained in his Traverse (Docket No. 19). Such cursory and general reiterations do not constitute the sort of objections meriting *de novo* review. *Cf. Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)(plaintiff "disputed the correctness of the magistrate's recommendation but failed to specify the findings that she believed were in error"). Moreover, the Magistrate Judge's clear recitation of the evidence most strongly indicative of Kent's guilt effectively dispels the notion that his conviction was unsupported by the record.

Finally, Kent challenges the performance of his appellate counsel and the "denial of his right to appeal" by the reviewing state courts.  The court agrees that the challenge to appellate counsel depends upon the challenge to trial counsel, since Kent's complaint concerning the former centers on an alleged "failure to raise all instances of trial counsel's ineffectiveness." On the basis of the court's above *Strickland* analysis, the challenge to the performance of appellate counsel must be dismissed. The court also agrees that Kent's remaining claims are not cognizable in a petition for federal habeas relief.  Kent may disagree with the state courts' application of Ohio Appellate Rule 26(B), but he cannot demonstrate that said application has interfered with his ability to present his grievances with respect to the exercise of his constitutional rights.  Having agreed *supra* that said rights were not violated by an unreasonable application of federal law, the court must therefore overrule Kent's final objection.

### III. Conclusion

For the foregoing reasons, this court adopts Magistrate Judge Gallas's findings of fact and conclusions of law. Kent's petition for a writ of habeas corpus is therefore denied.

Because the issues presented by Kent regarding the manner in which his original trial was conducted leave concerns regarding the denial of his constitutional rights, the court finds probable cause supports the issuance of a certificate of appealability for this order.  *See* 28 U.S.C. § 2253(c)(2). Kent should be permitted to appeal the court's rulings on his first and second objections, concerning the conduct of his joint trial with Greene, and his claim of ineffective assistance of counsel.  *See* 28 U.S.C. § 2253(c)(3).

IT IS SO ORDERED.

                                        /s/ Ann Aldrich
                                        ANN ALDRICH
Dated:  January 24, 2006                UNITED STATES DISTRICT JUDGE